EDWARD S. ROTHCHILD, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 51219. Promulgated June 28, 1933.

*Morris Barasch, Esq.,* for the petitioner.
*B. M. Coon, Esq.,* for the respondent.

OPINION.

VAN FOSSAN: Respondent determined a deficiency of $9,471.37 in income taxes for the year 1928.

The parties entered into a stipulation of facts, the pertinent parts of which are as follows:

On or about the 26th day of May 1926, the petitioner became a member of a syndicate formed for the purpose of dealing in the shares of capital stock of the Chelsea Exchange Bank of New York. The petitioner had a 25 percent interest in this syndicate.

On the 5th day of December 1927, petitioner became a member of a second syndicate formed for the purpose of dealing in the shares of capital stock of the Chelsea Exchange Bank of New York. The petitioner had an 18 percent interest in this second syndicate.

The syndicate agreement provided:

THIRD: Accurate books of account shall be kept under the direction of the syndicate manager and periodically, not less than quarter-yearly, a report shall be made to the syndicate members covering the operations of the syndicate during the preceding quarter.

FOURTH: The syndicate manager will purchase for the syndicate, as soon as practicable after the execution of this agreement, approximately thirty-five hundred (3500) shares of the capital stock of the said Bank at the best price or prices obtainable, but not to exceed in any event three hundred and ten ($310.) dollars per share. The syndicate manager may thereafter, from time to time, purchase additional shares of the stock of said Bank in his discretion and at prices which he may deem fair and reasonable, the holdings of said stock by the syndicate not to exceed, however, at any one time five thousand (5,000) shares. The syndicate manager may from time to time

in his discretion, sell all or any number of the shares of said stock in the syndicate at prices to be fixed by him.

\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*

SEVENTH: To enable the syndicate manager to make the initial purchase of approximately thirty-five hundred (3500) shares of stock of said Bank, the parties hereto shall pay into the syndicate, in cash, upon the execution of this agreement, twenty-five per cent. (25%) of the estimated purchase price thereof, each party contributing in accordance with his respective interest or share in the syndicate. The syndicate manager will then pledge or hypothecate said stock at a bank or trust company to raise the funds necessary to complete such purchase, and each syndicate member, if required so to do, shall execute a guarantee of the payment of any collateral note evidencing such indebtedness to the amount of his proportionate interest or share in said syndicate. Any syndicate member may pay in cash his entire contribution to the syndicate fund, in which event no guarantee of any note shall be required of him.

\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*

NINTH: Syndicate stock shall be registered in the name of the syndicate manager or his nominee or nominees, and the syndicate manager shall vote such stock as he shall deem to be for the best interests of said syndicate at the annual meeting of stockholders of said Bank or at any special meeting called for any purpose, including authorization to increase the capital stock of said Bank or the merger of said Bank with another bank or trust company.

TENTH: The syndicate herein may be dissolved by the vote of a majority in interest of the members hereof at any time, and it shall be dissolved in any event twelve (12) months from the date hereof and on such dissolution there shall be a final accounting and distribution pro rata of the funds in the syndicate as hereinabove recited.

Upon the closing of the first syndicate petitioner received a call on 643 shares of the capital stock of the Chelsea Exchange Bank at $200 a share, which he exercised, and on or about the 6th day of January 1928, he transferred the 643 shares acquired at a cost of $128,600 to the second syndicate at $301 a share, receiving from the second syndicate a check for $193,517.28.

On or about the 6th day of January 1928, petitioner gave the second syndicate a check for $47,700 in accordance with the terms of the second syndicate agreement.

(A loan guarantee agreement, dated December 8, 1927, was entered into by and between the members of the second syndicate.)

On January 6, 1928, the second syndicate had loans payable to the National City Bank of $789,975 secured by 3,511 shares of Chelsea Exchange Bank stock. Petitioner's interest in the 3,511 shares, in accordance with the terms of the second syndicate agreement, was 18 percent, or 631.98 shares.

Of the 3,511 shares of Chelsea Exchange Bank stock hypothecated on the loan with the National City Bank, 56 shares were withdrawn during the year 1928 and sold by the second syndicate to outsiders.

The petitioner contends that of the 643 shares of Chelsea Exchange Bank stock acquired by him from the first syndicate and transferred to the second syndicate, the petitioner has realized a profit of $1,113.02 on 11.02 shares, being the difference between his 18 percent participation in the 3,511 shares of Chelsea Exchange Bank stock hypothecated by the second syndicate on loans from the National City Bank, or 631.98 shares, and the 643 shares acquired by him from the first syndicate; and that of the 56 shares of Chelsea Exchange Bank stock hypothecated with the National City Bank and withdrawn and sold by the second syndicate to outsiders, the petitioner realized a profit of $1,018.08 on 18 percent of said 56 shares or 10.08 shares; or a total profit of $2,131.10 on the 21.1 shares.

The Commissioner contends that the transaction in connection with the aforesaid 643 shares of Chelsea Exchange Bank stock is a sale on which the petitioner has realized a profit of $64,917.28.

Attached to the stipulation was a transcription of the transactions of the second syndicate, including January 6, 1928, in which appeared the following entries:

Jan. 6, 1928 Received on account of loan on

| | | | | | | |
|---|---|---|---|---|---|---|
| 643 shares Chelsea Ex. Bank Stock | | | | | (Mr. Rothchild) | |
| 700 " | " | " | " | " | (1st Syndicate) | |
| 178 " | " | " | " | " | (Mrs. Hardy) | |
| 59 " | " | " | " | " | (Mr. L. Hardy) | |
| 165 " | " | " | " | " | (Mr. T. Hardy) | |
| 1745 " | " | " | " | " | (Total) | $392,625.00 |

Jan. 6, 1928 Capital contribution from Mr. Rothchild__ _____ ___   47,700.00
Jan. 6, 1928 Paid to the following for shares of Chelsea Exchange Bank stock on which the above loan of $392,625.00 was made this day:
    Mr. Rothchild_____ _____   193,517.28

No evidence in addition to the stipulation was presented at the hearing.

In cases before the Board, excepting cases of fraud or those involving transferee liability, the burden of proof is on the taxpayer. He must prove the determination of respondent to be erroneous. In the instant case the question involves the determination of the nature of a " transfer " of stock. The word " transfer " is not self-defining. A stock transfer may be incident to a sale, a loan, a pledge, a gift, or innumerable other types of transactions. Here we know that the stock was transferred and that petitioner received a check for $193,517.28. This action suggests a sale. The book entries made the same day tend to corroborate the suggestion that the transfer was consequent on a sale. We are of the opinion, on such evidence as is before us, that petitioner has not proved respondent's determination that a sale occurred to be incorrect.

We are wholly unimpressed by petitioner's argument as to the nature of the transaction and the amount of gain realized. Nor do we deem it necessary to enter into a discussion of the same. The theory advanced is so obviously labored as to make it profitless to attempt an analysis of the same.

In our opinion the only question worthy of consideration is whether petitioner was correct in his original concept of liability for tax as indicated by his return. The basis of petitioner's tax return was that to the extent of 18 percent, his share in the syndicate, the sale by petitioner to the syndicate was a sale to himself and to that extent without profit. He reported as profit 82 percent of the difference between cost and sale price.

The formulation of an all-embracing definition of the term " syndicate " is difficult, perhaps impossible. We do not attempt it. This may be said however. The evidence as to the syndicate shows that it was, at the least, a business entity. The syndicate agreement set up an organization for the transaction of a definite business purpose, i.e., the purchase and sale of stock. A manager was designated to conduct the business activities, record the same and render accounts of his stewardship. Title to stocks acquired by the syndicate was held in the name of the manager and he was authorized to vote the same. The manager had full authority to buy, hold, sell, and deliver shares as he saw fit. He received contributions to the syndicate capital fund, borrowed and repaid money and managed all other aspects of its affairs.

Thus whether the syndicate was an association, a partnership, a joint venture, or some sort of agency, there was a business entity which it is impossible to ignore. Respondent has determined that on the sale of the stock to the syndicate there occurred a closed transaction in which profit was earned measured by the difference between the amount paid and the cost of the stock. The evidence does not convince us that this conclusion was incorrect.

Reviewed by the Board.

*Decision will be entered for the respondent.*